JORGE MALDONADO ROSADO, peticionario y apelante, *v.* JUAN S. BRAVO, ALCAIDE DE LA CÁRCEL DE DISTRITO DE SAN JUAN, P. R., recurrido y apelado.

Núm. 10627.—*Sometido:* Febrero 11, 1952. *Resuelto:* Marzo 11, 1952.

*E. Martínez Avilés,* abogado del apelante; *Hon. Procurador General Víctor Gutiérrez Franqui, J. Rivera Barreras, Fiscal del Tribunal Supremo y Frank Vizcarrondo Vivas, Fiscal Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

En la denuncia presentada ante el Tribunal Municipal de Puerto Rico, Sala de San Juan, se imputa a Jorge Maldonado que "voluntaria y maliciosamente tiene en completo estado de abandono sin excusa legal a su menor hija natural reconocida nombrada Iris Nereida Maldonado de 7 meses de edad." Llamado el caso para juicio y luego de discutirse cierta cuestión de derecho por él suscitada, se le sentenció a sufrir 6 meses de cárcel, pero se dejó en suspenso la sentencia a condición de que pasara a su referida hija la suma de $25 mensuales. Maldonado ingresó en la cárcel y luego acudió con una solicitud de hábeas corpus ante el Tribunal de Distrito de Puerto Rico, Sección de San Juan. En ella alegó, entre otras cosas, que el Tribunal Municipal le había sentenciado sin tener jurisdicción. Expedido el auto y visto el recurso en sus méritos, el mismo fué declarado sin lugar. Apeló el peticionario para ante nos y alega ahora que el Tribunal de Distrito erró al resolver que no era aplicable a su caso la Ley núm. 108 de 1940 (pág. 673). Hagamos un análisis de esa ley para determinar si le asiste o no la razón.

■■■■ Por la sección primera de ella se dispone que el padre en primer término y la madre después, están obligados a alimentar a sus hijos ilegítimos, menores de 16 años de edad, fueren o no reconocidos. Por la sección 2 que el padre o la madre que faltare a esa obligación sufrirá la pena correspondiente al abandono y descuido de menores fijada en el Código Penal. Por la sección 3 que el requerimiento indicado en el artículo anterior lo ordenará el juez municipal (¹) del municipio donde residan los presuntos padres, a solicitud por escrito y bajo juramento de la persona que tenga bajo su custodia al menor. Por la sección 4, que dentro de los ocho días el requerido comparecerá ante el funcionario que expidió el requerimiento y aceptará o no la paternidad; y que si la aceptare manifestará si está conforme con cumplir con su obligación de proveer alimentos al menor. Por la sección 5, que si después de haber comparecido el presunto padre o madre ante el juez municipal o de paz y luego de haber aceptado la paternidad dejare de cumplir sus obligaciones para con el menor, las diligencias correspondientes serán enviadas por dicho juez a la Corte para Niños del Distrito Judicial (²) de la residencia del menor, debiendo ordenar éste, de existir causa probable, que por la persona querellante o por un oficial probatorio se presente la correspondiente denuncia; así como que la jurisdicción de las cortes para niños será exclusiva para conocer de los casos comprendidos en esa ley, pudiendo establecerse apelación por el padre o madre declarado culpable para ante el Tribunal Supremo. Y por la sección 6, que cuando un padre o madre que hubiere aceptado la paternidad del menor fuere condenado por virtud de esa ley, el juez que entendiere en la causa podrá dejar en suspenso la sentencia

(¹) Por la sección 5 de la ley se da a entender que el requerimiento también puede hacerlo el juez de paz del lugar donde residan los presuntos padres del menor.

(²) Por el artículo 24 de la Ley 432 de 15 de mayo de 1950 (págs. 1127, 1135) Estableciendo la Ley Orgánica de la Judicatura de Puerto Rico, se crea un Tribunal Tutelar de Menores en cada una de las secciones del Tribunal de Distrito de Puerto Rico.

bajo las condiciones que tuviere a bien imponer, en bienestar del menor abandonado.

La única cuestión a ser determinada en este recurso es, pues, si alegándose en la denuncia presentada en el Tribunal Municipal que la menor abandonada era hija natural reconocida del acusado—peticionario en este recurso—era indispensable hacer a él el requerimiento provisto por la ley 108, supra, antes de que pudiera iniciarse en su contra una acción de índole penal. Veamos:

Aunque por la citada ley se impone al padre la obligación de alimentar a sus hijos ilegítimos, menores de 16 años, fueren o no reconocidos, tal obligación no es nueva en nuestro derecho, ya que a tenor de lo provisto por el Código Civil los hijos ilegítimos han tenido siempre derecho a percibir alimentos de sus progenitores.[3] Así pues, la referida ley de 1940 no creó en favor de los hijos ilegítimos ningún derecho substantivo que antes no existiera. En verdad, el propósito primordial de ella no fué otro que lograr, mediante un procedimiento sumario, que el hijo ilegítimo perciba alimentos de aquél que le engendró. Para ello dispuso que el padre sea requerido por el juez del pueblo de su residencia, luego de presentarse por la persona que tenga al menor bajo su custodia una declaración jurada en relación con el abandono de éste, a fin de que aquél exprese si acepta o no la paternidad. La obligación de alimentar al menor ya la imponía la ley, y ésta no tiene por miras cosas fútiles. *Rivera v. Cruz*, 67 D.P.R. 770, 772. Cosa fútil sería, desde luego, el requerir al padre de un hijo natural reconocido para que comparezca ante el juez de paz o municipal con el propósito de admitir la paternidad. Por tanto, si se desprende de la denuncia, como ocurre en este caso, que el menor abandonado es hijo natural reconocido del acusado, no es posible concluir que debido a la ausencia del requerimiento a que alude la ley la corte que conoció del caso de abandono de menores carecía por tal motivo de jurisdicción.

[3] Véase el artículo 128 del Código Civil, Ed. 1930.

Teniendo lo anterior en mente fué que en nuestra opinión en el caso de *Pueblo* v. *Lamboy*, 59 D.P.R. 174, 177, dijimos que "ningún presunto padre puede ser procesado y castigado por abandono de su hijo menor, si no se le ha requerido previamente." Véase también *Pueblo* v. *Emmanuelli*, 61 D.P.R. 209, 211, donde nos expresamos en términos similares. Hablamos en esos casos de presunto padre pensando, no en el padre de un hijo natural reconocido, sino en el de un hijo ilegítimo cuya paternidad era necesario determinar, bien mediante la aceptación de la misma por el presunto padre después de hacérsele un requerimiento a tal efecto o bien probándola dentro de la causa criminal por abandono de menores. A este último efecto véase *Pueblo* v. *Rodríguez*, 67 D.P.R. 735.

*Debe confirmarse la sentencia apelada.*